UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) No.  3:14-cr-30128-NJR |
| | ) |
| BECKY S. MARRS, | ) |
| | ) |
| Defendant. | ) |

**UNITED STATES' SUPPLEMENTAL EVIDENTIARY
PROFFER OF CO-CONSPIRATOR STATEMENTS**

The UNITED STATES OF AMERICA, by and through its attorneys, James L. Porter, Acting United States Attorney for the Southern District of Illinois, Scott A. Verseman, Assistant United States Attorney, and Shane B. Kelbley, Special Assistant United States Attorney, and hereby submits the following supplemental evidentiary proffer of co-conspirator statements.

### I. INTRODUCTION

On September 22, 2015, the United States filed its Evidentiary Proffer and Memorandum of Law Regarding the Admission of Co-Conspirator Statements. In that document, the United States outlined the statements that it will seek to introduce at trial pursuant to Federal Rule of Evidence 801(d)(2)(E). In this Supplemental Proffer, the United States wishes to advise the Court of additional statements that it will seek to introduce under Rule 801(d)(2)(E). These additional statements consist of telephone conversations, and recordings of some of those conversations, that an individual named "R.H." had with a Vacation Max receptionist and an Vacation Max updater using the false name of "Carl Golden."

## II. EVIDENTIARY PROFFER

R.H. is the son of Victim E.H. On June 24, 2010, defendant Becky S. Marrs, using the false name of "Stephanie Clark," called E.H. on behalf of Vacation Max. Defendant told E.H. that she had a buyer who wanted to purchase E.H.'s timeshare for $39,500. Defendant promised that the closing would occur within one month.

Defendant then told E.H. that Vacation Max's fee was $3,500. E.H. responded that she could not pay this fee – her sole income was her monthly Social Security check. Defendant replied that the $3,500 could be paid at the time of the closing. However, defendant also told E.H. that she would have to provide a copy of a check in the amount of $1,000, made payable to Vacation Max. Defendant promised E.H. that Vacation Max would not attempt to cash the $1,000 check, but instead would hold it until the time of the closing. Relying upon defendant's promise, E.H. wrote a $1,000 check to Vacation Max, scanned it, and e-mailed it to Defendant.

The very next day, Vacation Max cashed E.H.'s check. When E.H. called to find out what had happened, defendant stated that there had been "an unfortunate mistake." Despite this "mistake," defendant stated that Vacation Max could not return E.H.'s money, but that she would attempt to "expedite" the closing on E.H.'s timeshare.

When her bank continued to send her overdraft notices regarding her account, E.H. again called defendant and pleaded for the return of her $1,000. Defendant was rude, but promised that the money would be returned by July 19, 2010.

When the money was not returned by July 19th, E.H. called back. Although she asked to speak with "Stephanie Clark," an individual using the name "Carl Golden" called her back. Golden attempted to get E.H. to wait until the closing took place within the next 24 days. At this point, E.H.'s son, R.H., got involved.

R.H. placed numerous phone calls to Vacation Max, the last several of which he recorded. In addition to the person who answered the phone,[1] R.H. also spoke to Carl Golden. R.H. repeatedly demanded the return of his mother's $1,000. Golden repeatedly stalled. He repeatedly promised that the money would be returned by a certain date. Those dates came and went without the return of the $1,000. R.H. repeatedly follow-up and continued to demand the return of his mother's money.

After R.H. threatened to contact the Better Business Bureau and the state Attorney General's office, in early August 2010 Vacation Max wired $1,000 to E.H.'s bank account. Three days later, however, Vacation Max reversed the deposit and took back the $1,000 it had sent. When R.H. called to find out why Vacation Max had done this, Golden gave him a false excuse about the Vacation Max's bank thinking the transaction was fraudulent, because the check had been written out of sequence. R.H. pointed out that this explanation did not make any sense, since the deposit had been made via wire transfer.

R.H. refused to let the matter drop. After repeated threats to contact the state Attorney General and to file a lawsuit, Vacation Max finally returned his mother's $1,000.

### III.   BASIS FOR ADMISSION

As with the statements referenced in the United States' initial proffer, the statements made to R.H. by "Carl Golden" and the Vacation Max receptionist will not be offered to prove the truth of the matter asserted. To the contrary, many of these statements were false. For example, Carl Golden's explanation regarding the reversal of the initial $1,000 deposit to E.H.'s account is a patent lie.

---

[1]   When he called, R.H. repeatedly asked to speak "Carl Golden," the person he'd been told was handling his mother's matter. The person who answered the phone often provided excuses as to why Golden was not available. Usually, R.H. was only able to speak to Golden when Golden called back after repeated messages left by R.H.

Rather that offering these statements for the truth of the matter asserted, the statements will be offered to demonstrate how the Vacation Max conspiracy utilized updaters, such as Carl Golden, to attempt to forestall the payment of refunds to angry customers. Because these statements will not be offered to prove the truth of the matter asserted, they do not constitute hearsay. *See* Fed. R. Evid. 801(c)(2).

In the alternative, the statements of "Carl Golden" and the receptionist to R.H. constitute co-conspirator statements, which are admissible under Fed. R. Evid. 801(d)(2)(E). The object of the Vacation Max conspiracy was to maximize the profits of both the company and the closers, such as Defendant, who were paid on commission. In order to maximize these profits, Vacation Max employed individuals known as updaters. The job of these updaters was to string the customers along to prevent them from requesting chargebacks from their credit card companies, or otherwise demanding the return of their funds. The conversations between Golden, the receptionist, and R.H. are clear examples of a victim being strung along. In addition, these conversations demonstrate the conspiracy's efforts to make it as difficult as possible for the victims to receive refunds.

## IV. CONCLUSION

For the reasons set forth above, the United States respectfully requests this Court find the statements by "Carl Golden" and the Vacation Max receptionist to R.H., and the recordings of those conversations, do not constitute hearsay within the meaning of Federal Rule of Evidence 801(c).

In the alternative, the United States respectfully requests this Court find that there is sufficient evidence to prove the existence of a conspiracy, defendant's membership in the conspiracy, and that the proffered statements were made in furtherance of that conspiracy.

Therefore, those co-conspirator statements are admissible at trial pursuant to Federal Rule of Evidence 801(d)(2)(E).   At the conclusion of its case-in-chief, the United States will request that this Court make a finding that a preponderance of the evidence has established those same three elements, and that the proffered statements were properly admitted under Rule 801(d)(2)(E).

                Respectfully submitted,

                JAMES L. PORTER
                Acting United States Attorney
                Southern District of Illinois

By:   *Scott A. Verseman*
        SCOTT A. VERSEMAN
        Assistant United States Attorney

By:   *Shane B. Kelbley*
        SHANE B. KELBLEY
        Special Assistant United States Attorney
        9 Executive Drive
        Fairview Heights, IL 62208
        Tel: (618) 628-3700
        Fax: (618) 628-3730
        Email: scott.verseman@usdoj.gov

## CERTIFICATE OF SERVICE

The undersigned Assistant United States Attorney hereby certifies that in accordance with FED. R. CRIM. P. 49, FED. R. CIV. P. 5, LR 5.5, and the General Order on Electronic Case Filing ("ECF"), the foregoing: "United States' Supplemental Evidentiary Proffer of Co-Conspirator Statements" was served on February 23, 2016, pursuant to the district court's ECF system, on all ECF filers.

*Scott A. Verseman*
SCOTT A. VERSEMAN
9 Executive Drive
Fairview Heights, IL 62208
Tel: (618) 628-3700
Fax: (618) 628-3730
Email: scott.verseman@usdoj.gov